IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BECO DAIRY AUTOMATION, INC., | CASE NO. CV-F-12-1310 LJO SMS |
| Plaintiff, | **ORDER ON DEFENDANT'S MOTION TO DISMISS** and **STRIKE** (Doc. 7) |
| vs. | |
| GLOBAL TECH SYSTEMS, INC., | |
| Defendant. | |

## INTRODUCTION

Defendant Global Tech Systems, Inc. ("Global Tech") moves to dismiss plaintiff Beco Dairy Automation, Inc.'s ("Beco's") third through seventh causes of action pursuant to Fed. R. Civ. P. 12(b)(6). Global Tech argues that Beco has failed to plead with particularity its fraud claims in the third, sixth and seventh causes of action. Global Tech asserts that Beco's fourth cause of action fails because there are insufficient facts to establish that there is a breach of an oral contract for a joint venture. Finally, Global Tech faults Beco's complaint for failing to allege sufficient facts to establish a fiduciary duty, as asserted in Beco's fifth cause of action. By separate motion, Global Tech moves to strike Beco's second cause of action for breach of contract, arguing that it is redundant. For the foregoing reasons, this Court GRANTS in part and DENIES in part Global Tech's motion to dismiss and DISMISSES Beco's fraud causes of action with LEAVE TO AMEND. This Court DENIES Global Tech's motion to strike the second cause of action as redundant.

# BACKGROUND[1]

Beco is an industry leader in dairy automation. Beginning in 1998, Bob Borchert ("Mr. Borchert"), Victor Viesca ("Mr. Viesca"), Antonio Fernatt ("Mr. Fernatt"), Stan Brown ("Mr. Brown") and Beco began collaborating on the technology that would become the proprietary "no moving parts milk meter system" that would eventually be called the ScanNexus electronic milk meter (the "Meter"). From this time and until April 2008, Mr. Borchert was a director at Beco. In June 2003, Mr. Borchert became the Director of Marketing at Beco. Mr. Brown has been both a director and President of Beco.

Beco began to invest a considerable sum of money at this time for research and development on the technology for the Meter. In September 1998, Mr. Borchert, Mr. Viesca, and Mr. Brown agreed to pay Mr. Fermatt a salary of $2,500 per month to develop the Meter. In addition to paying a salary and purchasing hardware, software, and other items, Beco also paid for Mr. Fernatt's travel while he worked on development of the Meter in Mexico. Later, Beco paid for Mr. Fernatt to relocate to Hanford, California to continue his work on the Meter. Beco further paid his salary and living expenses while Mr. Fermatt lived in Hanford.

In August 2000, Mr. Borchert, Mr. Brown, Mr. Viesca, and Mr. Fernatt began working with Beco's patent attorney to start a patent application for the Meter technology.

In February 2001, Mr. Borchert, Mr. Brown, Mr. Viesca, and Mr. Fernatt formed defendant Global Tech for the purpose of continuing to develop the Meter. Even after Global Tech was created, however, Beco continued to expend considerable funds to market the Meter. Due to setbacks, the Meter was not ready for sale as anticipated in early February 2001 and the shareholders of Global Tech were not willing to invest more money on the technology. Accordingly, Global Tech asked Beco to take over the entire development expense and direct the project of developing the Meter.

Beco did take over the expenses, including paying Mr. Fernatt's salary, living expenses, immigration fees, and other expenses. Mr. Fernatt was an employee of Beco from November 2001 through December 2007. His job was always to develop the Meter.

---

[1] The factual background is derived from the allegations of the complaint, which this Court accepts as true for purposes of this Fed. R. Civ. P. 12(b)(6) motion. *See Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

1    Also in 2001, Beco, through Mr. Brown, and Global Tech, through Mr. Fernatt, began another
2 collaboration effort.  This time, the parties worked to create a pulsation monitoring system that would
3 be called the PulsNexus ("Pulsation System") , a "heads up" stand alone automatic take-off system that
4 would be called the FlowNexus detachment electronics (the "Take-Off"), and software that would
5 manage and integrate these products that would later be called the ParlorScan software ("the Software")
6 (collectively referred to as the "Product Line").  The Meter, the Pulsation System and the Take-Off were
7 meant to be stand-alone equipment to aid a dairy farmer.  All systems were intended to be integrated
8 with each other and to communicate with the Software.

9    In 2002, Beco and Global Tech began to collaborate on the development and marketing of yet
10 another product that was a proprietary Cow Identification System Board ("Cow ID").  The Cow ID was
11 not part of the Product Line, but would make the Product Line more marketable, as it would distill
12 information taken from the Product Line and given information about an individual cow's performance.
13 The parties agreed in the beginning that Beco would pay for the development of Cow ID and was to
14 own Cow ID outright.  Later, Beco and Global Tech formed a joint venture to develop Cow ID.  At
15 different points, the parties discussed and formulated written agreements related to Cow ID.

16    Between 2003 and 2005, Beco began to purchase Product Line components from Global Tech
17 and Global Tech began to repay Beco for its investment in the Product Line.  In 2003, Global Tech opens
18 its own facility in downtown Hanford and pays Beco $100,000 as a partial return on Beco's investment
19 in the Product Line.  By the end of 2004, Beco has purchased $346,000 of Product Line components
20 from Global Tech and has expended approximately $92,000 more toward Product Line development
21 costs. Global Tech paid Beco $32,000 more as a partial return on Beco's investment in the development
22 of the Product Line.  Between January and May 2005, Beco purchased approximately $375,000 of
23 Product Line components from Global Tech.

24    In May 2005, Beco and Global Tech decide to create an agreement that will acknowledge the
25 investment in development of the Product Line by Beco and define the relationship and obligations of
26 the parties. The parties enter into this agreement on May 5, 2005.  Pursuant to the agreement, the partie
27 agreed that in exchange for its part in the development of the Product Line, Beco has the right to be the
28 exclusive distributor of the Product Line in specific territories and is entitled to repayment for the hard

3

costs that it expended on the Product Line. Repayment of those costs would be tied to sales. In turn. Global Tech would supply Product Line components and services. At the time of the agreement, all parties acknowledged that the Product Line was not yet developed fully and that the successful marketing of the Product Line by Beco was dependent on the completion of the Cow ID system.

When the parties entered into the May 2005 agreement, they further agreed that Mr. Fernatt would continue on Beco's payroll for 23 weeks to complete the Cow ID system. After 27 weeks, the Cow ID system was still incomplete. Mr. Fernatt became an employee of Global Tech, but promised that Mr. Fernatt would complete the Cow ID.

Eventually, Beco begins to sell the Product Line even though it was incomplete. Beco sold the Product Line to dairies and Global Tech produced the internal motherboard components for the products. Due to problems with the Meter and Cow ID, sales of the Product Line have never reached full potential. At this time, neither the Meter nor the Cow ID system has been completed, and neither works properly or as anticipated at the time of the May 2005 written agreement between the parties.

After the 2005 agreement, tensions arose between the parties. Global Tech continually attempted to coax Beco to modify the written agreement as to the Product Line and the joint adventure agreement as to the Cow ID.

In 2008, Beco ordered a motherboard component for a Cow ID system from Global Tech, but Global Tech refused to ship the component unless Beco paid Global Tech for Mr. Fernatt's time spent developing Cow ID. Global Tech sent Beco an invoice for Mr. Fernatt's time. Beco refused to make the payment, taking the position that it never agreed to pay for Mr. Fernatt's time, Mr. Fernatt was supposed to have finished Cow ID years before, and Global Tech agreed to pay for Mr. Fernatt's time as part of the parties' joint venture on the Cow ID.

In response to Beco's refusal to pay the invoice submitted, Global Tech demanded that Beco enter into a modified contract as to the Product Line and Cow ID. Global Tech threatened that it would not fulfill its obligations to Beco unless Beco entered into a modified agreement. Specifically, Global Tech "refused to provide the 4 input module stating that [Global Tech] never actually completed the 4 input module as earlier represented, in spite of the fact that the Product Line was never completed and needed to be fixed and the requirement that it provide necessary adjustments pursuant to the contract

regarding the Product Line." Compl., ¶48. In addition, Global Tech refused to provide Beco with the firmware or source codes so that Beco could perform the necessary changes. Similarly, Global Tech refused to fix the problems with the Cow ID or provide Beco with the source code, in spite of the fact that Beco is a co-owner of Cow ID.

As a result of Global Tech's refusal to fulfill its obligations pursuant to the parties agreements, Beco lost a sale to a dairy. Accordingly, Beco brought this action against Global Tech, asserting the following causes of action:

1. Breach of written contract;
2. Breach of contract–detrimental reliance;
3. Actual fraud;
4. Breach of contract–joint venture;
5. Breach of fiduciary duty;
6. Actual fraud;
7. Constructive fraud;
8. Declaratory relief regarding joint venture;
9. Intentional Interference with economic relationship; and
10. Declaratory relief regarding joint venture.

Global Tech moved to dismiss Beco's fraud claims (third, sixth and seventh causes of action) breach of contract claim (fourth cause of action), and breach of fiduciary duty claim (fifth cause of action). Global Tech further moved to strike Beco's second cause of action for breach of written contract, arguing that it is redundant to the first claim for breach of contract. Beco opposed the motions and Global Tech filed timely replies. Having considered the parties' arguments and the relevant legal authorities, this Court finds this motion suitable for a decision without a hearing. Accordingly, this Court vacates the September 20, 2012 hearing on these motions and issues the following order.

## STANDARDS OF REVIEW

### Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the pleadings set forth in the complaint. A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either

a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations of the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (internal citations omitted). Thus, "bare assertions...amounting to nothing more than a 'formulaic recitation of the elements'...are not entitled to an assumption of truth." *Iqbal*, 129 S. Ct. at 1951 (quoted in *Moss v. United States Secret Serv.*,572 F.3d 962, 969 (9th Cir. 2009)). A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted). In practice, a counterclaim "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562.

### Fed. R. Civ. P. 9(b)

Although Fed. R. Civ. P. 8 requires only a short and plain statement, Fed. R. Civ. P. 9(b) requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b)'s

6

particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir.2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.1995) (italics in original)).

Fed. R. Civ. P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172,1178 (9th Cir.1996). Fed. R. Civ. P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727,731 (9th Cir.1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671–672 (9th Cir.1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir.1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances constituting fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth.... [W]e [have] observed that plaintiff must include statements regarding the time, place, and nature of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." ... The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading....
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547–1548 (9th Cir.1994) (en banc) (italics in original), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm*. Corp., 927 F.Supp. 1297 (C.D.Cal.1996); *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged).

///

7

**Fed. R. Civ. P. 12(f)**

## DISCUSSION

### Whether the Fraud Claims are Plead Sufficiently

As set forth above, Beco's fraud claims are subject to Fed. R. Civ. P. 9(b)'s heightened pleading standards. Pursuant to these standards, Beco must state the allegations of these claims "with particularity." Beco asserts "actual fraud" in its third cause of action, "actual fraud" in its sixth cause of action, and constructive fraud in its seventh cause of action.

### Third Cause of Action

Beco asserts a claim of fraud against Global Tech in the third cause of action. The essential elements of fraud are: "(a) a misrepresentation (false representation, concealment, or nondisclosure), (b) knowledge of falsity (or 'scienter'), (c) an intent to defraud, i.e., to induce reliance, (d) justifiable reliance, and (e) resulting damages." *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1997). "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action." Conrad v. Bank of America, 45 Cal. App. 4th 133, 156 (1996). "[F]alse representations made recklessly and without regard for their truth in order to induce action by another are the equivalent of misrepresentations knowingly and intentionally uttered." *Yellow Creek Logging Corp. v. Dare*, 216 Cal. App. 2d 50, 55 (1963). A fraudulent state of mind includes not only knowledge of falsity of the misrepresentation but also an intent to induce reliance on it. *Lazar v. Sup. Ct.*, 12 Cal. 4th 631, 638 (1996).

Global Tech argues that Beco's third cause of action for "actual fraud" fails, because it is not plead with particularity. Global Tech contends that Beco failed to identify an individual who was part of the alleged fraud and failed to make an allegation related to a misrepresentation. Global Tech argues that based on the complaint, it cannot identify who made the alleged misrepresentation or what the alleged misrepresentation was.

Beco explains that the alleged fraud in the third cause of action is based on Global Tech's misrepresentation that it has corrected an inherent problem in the Meter and Cow ID in August 2009.

Compl., ¶¶ 43, 73, 74. Beco contends that it gave specific facts of the alleged malfunction of the Meter and Cow ID that Global Tech claims to have solved, namely, that it claimed to have fixed the "4 input module." Compl., ¶¶43, 74. In spite of Global Tech's representations, Global Tech did not fix these problems, according to the complaint. Moreover, Global Tech misrepresented that it fixed the problems to gain leverage in re-negotiating the existing agreements between the parties. Compl., ¶¶47, 76. Based on these allegations, Beco submits that the facts of the fraud are pled sufficiently.

In reply, Global Tech maintains that the complaint is insufficient, because Beco has not identified the person or persons who made the alleged misrepresentations. Moreover, Global Tech contends that the alleged misrepresentation is inadequately pled, because Beco failed to allege the specific words of the misrepresentation.

As to the alleged misrepresentation, this Court finds that it is pled sufficiently. Fed. R. Civ. P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity." McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996). Fed. R. Civ. P. 9(b) requires allegations of the circumstances constituting the fraud, such as the time, place and content of the alleged misrepresentation. *In Re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc). For example, a "plaintiff must set forth what is false or misleading about a statement and why it is false." Id. Here, Beco sufficiently specified the alleged misrepresentation by Global Tech; namely that Global Tech had fixed the Meter and Cow ID problems. Beco further specified why that misrepresentation was false; namely, that the issues had not been fixed and that Global Tech made the misrepresentation to gain leverage in a re-negotiation between the two parties. This information is sufficient to put Global Tech on notice as to the allegations that constitutes the fraud.

Global Tech further faults Beco for failing to allege specifically who made the alleged misrepresentations. To satisfy the Fed. R. Civ. P. 9(b) heightened pleading standard against a corporatoin, Beco must allege "the who, what, when, where, and how" of the alleged fraud. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). This Court has held consistently that in a fraud action against a corporation, "a plaintiff must allege the names of the person who made the allegedly fraudulent misrepresentations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Macris v. Bank of America, N.A.*, 2012 WL 273120 *11-12 (E.D. Cal. 2012)

1  (quoting *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App.4th. 153, 157 (1991)).  The heightened pleading standard of Fed. R. Civ. P. 9(b) require the allegations only be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud...so that they can defend against the charge and not just deny that they have done nothing wrong." *Semege v. Weidner*, 78-F.2d 727, 731 (9th Cir. 1985).

Here, although the misrepresentation is identified sufficiently, Beco has failed to identify the person who made the alleged misrepresentation to Beco.  Beco merely names "defendant" as the party who has made the misrepresentation.  The defendant in this action is Global Tech, a corporation.  Beco has identified a limited number of people who organized Global Tech; namely, Mr. Borchert, Mr. Brown, Mr. Viesca, and Mr. Fernatt.  This allegation may be sufficient enough to put Global Tech on notice as to whom may have made the misrepresentation.  However, because the roles of these named people are confused, particularly as to the time period of this alleged misrepresentation, it is unclear who made the alleged mispresentation.  The actors appear to be directors or employees of both Beco and Global Tech and appear to be involved in both corporations simultaneously.  Because it is unclear who made the alleged misrepresentation to whom, on whose behalf, and on what authority, this Court agrees with Global Tech that the fraud claim is insufficiently plead.  Accordingly, this Court dismissed the third cause of action with leave to amend.  Beco is directed to identify the party or parties who made the alleged misrepresentations, including their authority to make representations on behalf of Global Tech.

**Sixth Cause of Action**

Global Tech contends that Beco's sixth cause of action for actual fraud is insufficient, because it fails to plead each element of fraud, including the time, place, and contents of the allegedly false misrepresentation, the identity of those individuals, and the consequences of the scheme.

Beco contends that its sixth cause of action for actual fraud is predicated on Global Tech's false promise of a joint venture agreement with Beco to create and profit from the Cow ID.  Beco points out that the complaint sets forth the facts of the promise to create a joint venture, which was to create a "proprietary Cow Identification System Board that would integrate with the parties' current and future Product Line."  Compl, ¶83.  The complaint further sets forth the terms of the agreement that the parties would own the property jointly.  Beco alleges that at the time Global Tech made the promise and entered

into the oral joint venture with Beco, Global Tech had no intention to perform the promise and that the promise was made with the intent to induce Beco to contribute money for Cow ID. Compl, 96, 97. Beco alleges that it was induced to invest large sums of money, trade secrets, marketing, and development support based on that promise, which Global Tech made to Beco in early 2002.

As with the third cause of action, this Court finds that Beco's complaint sufficiently pleads the misrepresentation, but fails to allege specifically who made the specific allegation. Beco has specified the alleged misrepresentation, why the misrepresentation is allegedly false, and the consequences of that misrepresentation. In this context, the limited scope of the specific people who were involved with Global Tech in 2002, when it was formed, puts Global Tech on notice as to whom may have been involved with entering into that alleged joint venture. Although the complaint gives Global Tech notice as to where to discover that information in a limited fashion, and this is a close call, this Court shall dismiss this cause of action with leave to amend. Beco is directed to identify who made the alleged promise on behalf of Global Tech to enter into the oral joint venture related to the Cow ID and that person or persons authority.

**Seventh Cause of Action**

Beco's seventh cause of action is for constructive fraud. "Unlike actual fraud, constructive fraud depends on the existence of a fiduciary relationship of some kind and this must be alleged." *Younan v. Equifax, Inc*., 111 Cal. App. 3d 498, 517 (1980). California Civil Code section 1573 defines constructive fraud as "any breach of duty which, without actual fraudulent intent...gains an advantage to the person at fault...by misleading another to his or her prejudice." Thus, constructive fraud mirrors actual fraud but replaces the requirement of scienter with the requirement of a fiduciary duty. *Engalla v. Permanente Medical Group, Inc*., 15 Cal. 4th 951, 981 (1997).

Global Tech again faults Beco's seventh cause of action for being "vague" as to the "pertinent actors" of the constructive fraud. Beco's seventh cause of action is predicated on its allegations related to the misrepresentations made in the alleged oral joint venture between the parties. Similar to the sixth cause of action, then, Beco has failed to plead sufficiently who made those misrepresentations. Accordingly, this Court dismissed this cause of action with leave to amend. Beco is directed to identify who made the alleged promises on behalf of Global Tech.

**Whether Complaint Alleges Sufficient Facts of an Order Contract for Joint Venture**

Beco's fourth cause of action asserts a breach of contract claim. This cause of action is based on Global Tech's alleged breach of the oral joint venture contract. Beco alleges that "In or around early 2002...Plaintiff and Defendant formed a joint venture by oral agreement, for the purpose of collaborating to create a proprietary Cow Identification System." Global Tech argues that Beco fails to allege with any specificity the terms and limits of the performance of its alleged "joint venture by an oral agreement" with Global Tech. Compl., ¶83. Global Tech contends that this allegations is fatally flawed because Beco failed to allege any specific terms relating to the alleged "joint venture" or any other limits to performance by which a breach could be ascertained.

Beco sufficiently pled its fourth cause of action. Beco alleged that the parties formed a joint venture to create the Cow ID system. Beco further alleged that the parties agreed "to jointly own the property, intellectually or otherwise." Compl., ¶84. The complaint specifies how profits were to be shared between the parties regarding the Cow ID system. Compl. ¶84. The allegations of the complaint satisfy Fed. R. Civ. P. 8 pleading standards and are sufficient to establish an alleged joint venture. *See, Connor v. Great W. Sav. & Loan Ass'n,* 69 Cal. 2d 850, 853 (1968) (elements of a joint venture are a joint interest in a common venture, with an understanding to share profits and losses and a right to joint control). Accordingly, Global Tech's motion to dismiss the fourth cause of action is denied.

**Whether Complaint Alleges Sufficient Facts to Establish a Fiduciary Duty**

In its fifth cause of action, Beco alleges a breach of fiduciary duty. This cause of action is based on the alleged oral joint venture between the parties. Global Tech argues that because Beco failed to plead sufficiently the existence of an oral joint venture between the parties, Beco's fifth cause of action fails.

Beco's breach of fiduciary duty claim is related to its fourth cause of action. "A fiduciary or confidential relationship can arise when confidence is reposed by persons in the integrity of others, and if the latter voluntarily accept or assume to accept the confidence, they cannot act so as to take advantage of the others' interests without their knowledge or consent." *Tri–Growth Centre City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg*, 216 Cal.App.3d 1139, 1150 (1989). The "existence of a fiduciary relation is a question of fact which properly should be resolved by looking at the particular facts and

circumstances of the relationship at issue.*" Bear Stearns & Co. v. Daisy Sys. Corp.*, 97 F.3d 1171, 1178 (9th Cir.1996). The "existence of a confidential or fiduciary relationship depends on the circumstances of each case and is a question of fact for the fact trier." *Kudokas v. Balkus*, 26 Cal.App.3d 744, 750 (1972). Here, the fiduciary duty arises if at all based on the relationship of the parties. If the parties entered into the joint venture together and were partners, then a fiduciary duty would have been established.

Global Tech argues that because Beco failed to plead sufficiently a joint venture existed between the parties, this claims also necessarily fails. As set forth above, however, this Court found that Beco properly pled a joint venture between the parties. For similar reasons, this Court denies Global Tech's motion to dismiss Beco's fifth cause of action.

**Whether Second Cause of Action is Redundant**

Finally, Global Tech moves to strike as redundant Beco's second cause of action pursuant to Fed. R. Civ. P. 12(f). Global Tech contends that Beco's second cause of action for "breach of contract–detrimental reliance" is redundant, because it is predicated on the same facts as its first cause of action for "breach of contract." In opposition, Beco asserts that these causes of action are based on distinct facts.

Specifically, Beco argues that the first cause of action is based on the 2005 written agreement between the parties, whereas its second cause of action is based on Global Tech's alleged failure to make specific adjustments that it represented it would make. Beco explains that its breach of contract cause of action is based on the written agreement. Beco contends that Global Tech breached its contract by failing to complete development of the Meter, repudiating the contract, and refusing to make adaptations to the procuts as called for by the contract. In the second cause of action for detrimental reliance, Beco alleges that Global Tech represented that it made certain adjustments to the product as called for under the contract but then never made those adjustments and that Beco relied on those representations to its detriment.

Based on the allegations of the complaint, and at this stage of the pleadings, this Court finds that the first and second causes of action are predicated on similar but distinct sets of facts. Because the cause s of action are not redundant, this Court denies Global Tech's motion to strike the second cause

of action pursuant to Fed. R. Civ. P. 12(f).

## CONCLUSION

For the foregoing reasons, this Court:

1. VACATES the September 20, 2012 hearing on these motions;
2. GRANTS in part and DENIES in part Global Tech's motion to dismiss;
3. DISMISSES with LEAVE TO AMEND Beco's third, sixth, and seventh causes of action;
4. DENIES Global Tech's motion to dismiss as it relates to Beco's fourth and fifth causes of action;
5. DENIES Global Tech's motion to strike Beco's second cause of action; and
6. ORDERS Beco to file an amended complaint no later than September 27, 2012.

IT IS SO ORDERED.

**Dated:   September 14, 2012**          /s/ Lawrence J. O'Neill
                                          UNITED STATES DISTRICT JUDGE