UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BECO DAIRY AUTOMATION, Inc., <br><br>Plaintiff, <br><br>v. <br><br>GLOBAL TECH SYSTEMS, Inc. and DOES 1-50, <br><br>Defendants. | 1:12-cv-01310 LJO SMS <br><br>MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS (Doc. 60) |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as

visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.

## II. INTRODUCTION

This litigation involves a contract dispute between Beco Dairy Inc. ("BECO") and Global Tech Systems, Inc. ("GTS") concerning the development and licensing of dairy technology.

## III. FACTUAL BACKGROUND

BECO is in the business of producing automated dairy technology. TAC ¶ 9. Around 1996, BECO conceived of developing an electronic "no moving parts" milk meter (the "Meter"). *Id.* at ¶10.

At some point prior to February 13, 2000, BECO began selling milk flow meters, as well as sensors that could detect the health of a dairy cow. *Id.* at ¶11. Around this time, BECO had an employee, Monte Lininger ("Lininger") who was tasked with researching the no-moving parts milk meter concept. *Id.* at ¶12. Lininger advised BECO that such a system could be developed by adding a third metal ring to BECO's existing flow meter. *Id.* BECO then realized it needed to collaborate with someone who had circuitry expertise to develop the Meter further. *Id.*

BECO's marketing director, Bob Borchert ("Borchert"), met with Victor Viesca ("Viesca"), the owner of a company in Mexico that manufactured parts for BECO. *Id.* at ¶13. Viesca introduced Borchert to Antonio Fematt ("Fematt"), a graduate student who had been working for Viesca, whom he thought could help develop the Meter. *Id.* Borchert introduced Fematt to BECO president Stan Brown in September 1997. Beginning in "late 1997," BECO began paying Fematt $2,500 a month to work on the Meter. *Id.* at ¶16.

BECO conducted conductivity experiments and shared its data with Fematt. *Id.* at ¶17. Between June and December of 1999, BECO paid for Fematt to relocate to Hanford, California to continue his work on the Meter. *Id.* at ¶18. BECO further paid his salary and living expenses while Fematt lived in Hanford. *Id.* After Fematt returned to Mexico, BECO continued to pay for equipment and hardware for Fematt. *Id.* at ¶19.

In March 2000, Borchert, Brown, Viesca, and Fematt began working with BECO's patent attorney, Dan Meanie, to start a patent application for the Meter technology. *Id.* at 57. BECO paid the fees for this work. Two patent applications were filed on February 13, 2001. *Id.* These applications matured into four U.S. patents. *Id.*

In February of 2001, BECO began marketing the Meter. *Id.* at ¶ 22. On February 20, 2001 Borchert, Brown, Viesca and Fematt founded Defendant GTS, a New Mexico-based corporation. *Id.* at ¶ 60. Before this date, Fematt assigned his interests as inventor to GTS as to the Meter. *Id.* at ¶ 20. Fematt acted as the president of GTS, though he did not become a GTS employee until December 2007. *Id.* at ¶ 21. In May 2001, Fematt moved back to California to work more closely with BECO. *Id.* at ¶ 23. BECO hired Fematt, and, in October 2001, sponsored his H1B visa. *Id.* at ¶ 24.

While at BECO, Fematt began development of a pulsation monitoring system ("Pulsation System"), a "head's up" stand-alone automatic take-off system ("Take-Off System") and software that integrated these systems ("Parlor Scan"). *Id.* at ¶ 26. Along with the Meter, these products made up a complete product line ("Product Line"). *Id.* Fematt also helped BECO develop a cow identification system ("Cow ID system") while he was their employee. *Id.* at ¶ 28.

Between 2003 and 2005, BECO began to purchase Product Line components from GTS and GTS began to repay BECO for its investment in the Product Line. *Id.* at ¶¶ 32-35. In 2003, GTS opened its own facility in downtown Hanford. *Id.* at ¶ 33.

In April 2005, BECO and GTS entered into an agreement wherein GTS agreed to "take on" development of the Cow Identification system so long as BECO continued to pay Fematt's salary and expenses.[1] *Id.* at ¶ 36. Under the terms of this agreement, BECO possesses all rights to the completed Cow ID system. Cow ID Agreement ¶ (d).

---

[1] It is unclear who legally employed Fematt at this time. The terms of this agreement (Cow ID Agreement, attached as Ex. A to the TAC) state that, for the purpose of the Cow ID project, "GTS will charge BECO the same salary []Fematt is getting as BECO employee" and that BECO will stop charging GTS for []Fematt salary as it is happening at this moment." BECO, however, maintains that Fematt remained a BECO employee until December of 2007. TAC ¶ 21.

3

In May 2005, BECO and GTS entered into an agreement regarding the Product Line. *Id.* at ¶ 37. Under the terms of this agreement, GTS possesses all rights to the Product Line and BECO has exclusive marketing rights to it in the continental US, Canada, Saudi Arabia and Japan. Product Line Agreement, TAC Ex. B. This agreement also describes that while GTS has obtained patent coverage for components of the Product Line, "the companies agree to decide jointly if any action will be taken on companies that infringe on the patents." *Id.*

Plaintiff asserts that at the time it filed its action, the Cow ID system was not completed and there were serious issues with the Meter. TAC ¶¶ 41-42. Plaintiff blames these problems for its inability to meet its sales objectives. *Id.* at ¶ 42. As time progressed, the parties' relationship disintegrated. Plaintiff alleges that Defendant failed to timely supply it with components for the Cow ID system and Product Line and failed to remedy defects discovered in 2009 and 2011, causing BECO to lose sales. *Id.* at ¶¶ 43-51. Plaintiff alleges that in 2013, Defendant began reaching out to Plaintiff's customers to sell them Cow ID and Product Line technology directly. *Id.* at ¶ 53. Ultimately, GTS refused to provide Plaintiff with the products at all. *Id.* at ¶ 56.

## IV. PROCEDURAL HISTORY

This litigation was initiated by BECO in Kings County Superior Court on July 10, 2012. BECO alleged breach of contract, fraud, and interference, and requested declaratory relief of its contractual rights related to its use of certain dairy automation products and technology. GTS removed this action to this Court. On August 17, 2012, GTS responded to the Complaint with a Motion to Dismiss for Failure to State a Claim and Motion to Strike; BECO was granted leave to amend its Complaint to make its fraud claims more specific. On September 27, 2012, BECO filed its First Amended Complaint. In response, GTS answered and counterclaimed against BECO, alleging breach of contract, interference, and misappropriation of intellectual property, and requesting declaratory relief, related to the same dairy automation products and technology. On March 11, 2013, BECO filed for stipulated leave to amend its Complaint to remove claims for breach of a joint venture and leave was granted on March 25, 2013.

Before BECO filed its amended Complaint, GTS filed for bankruptcy, and on April 23, 2013, an automatic stay issued. On October 28, 2013, the bankruptcy proceeding was dismissed. In accordance with the earlier order granting leave to amend, BECO filed its Second Amended Complaint (removing claims for joint venture breach) on November 12, 2013. GTS answered and counterclaimed on November 27, 2013. GTS Answer and Counterclaim ("GTS Counterclaim"), Doc. 16.

On October 17, 2013 (before the dismissal for the bankruptcy was entered), GTS filed a Complaint in the United States District Court for the District of New Mexico against BECO, *Global Tech Systems, Inc., v. Beco Dairy Automation, et al*. Case No. 1:13-cv-01006-JAP-KBM ("GTS Complaint").While the GTS Complaint and Counterclaim were similar, the GTS Complaint included new claims that BECO infringed on eight patents GTS held. In response to the GTS Complaint, on November 12, 2013, BECO filed its answer and a Motion to Dismiss or Transfer. Ultimately, the New Mexico Court transferred the case to the Eastern District of California, where it was renumbered as 1:14-cv-00865----SKO ("Case 865"). Shortly thereafter, BECO petitioned to consolidate this (above-captioned) case with Case 865 and requested leave to amend its own Complaint. On December 9, 2014, the Court consolidated the matters into this case. Consolidation Order, Doc 57. The Court granted BECO leave to amend and closed Case 865.[2]

BECO filed its third amended complaint ("TAC") December 18, 2014. Doc. 59. The TAC added an additional interference claim and seven claims related to the ownership and validity of the patents at issue in the GTS Complaint. *Id.* Now before the Court is GTS's motion to dismiss six of the seven patent claims under Rule 12(b)(6). Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss ("MTD"), Doc. 60-1. Plaintiff responded January 16, 2015. Mem. of P. & A. in Opp'n ("Opposition"), Doc. 61. Defendant filed its reply on January 26, 2015. Reply to Pl.'s Opp'n ("Reply"), Doc. 62. The Court

---

[2]Plaintiff expressed confusion as to the proper course of action with respect to its pleadings. The Consolidation Order intended to direct GTS to file any claims it asserted in Case 865 as counterclaims in this one, pursuant to the closure of Case 865 and Rule Fed. R. Civ. P. 13. Because that may not have been clear, the Court orders the parties to comply with this directive moving forward. *See* p. 17, *infra*.

deemed these matters suitable for decision without oral argument pursuant to Local Rule 230(g).

## V. <u>STANDARD OF DECISION</u>

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint.[3] A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing

---

[3] Plaintiff explains that it intended to incorporate anticipated counterclaims in its TAC to "streamline" the consolidated cases. Opposition at 23-24. Regardless of the procedural posture of the case, the Court must evaluate Plaintiff's pleading within the framework of Rule 12(b)(6).

6

more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the Complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### VI. ANALYSIS

**A.  Whether Plaintiff Has Properly Asserted that Employee Monte Lininger is a Co-Inventor**

BECO's Tenth Cause of Action seeks a declaratory judgment that BECO employee Monte Lininger is a co-inventor for all eight of the patents at issue pursuant to 35 U.S.C. § 256. TAC ¶¶ 159-160. Section 256 states that a federal court "may order correction of the patent on notice and hearing of all parties concerned" when a patent erroneously omits the name of an inventor. 35 U.S.C. § 256(b). GTS argues that BECO has not pleaded sufficient facts showing that Lininger is a co-inventor of any claim of any patents at issue. MTD at 3.

In a Section 256 proceeding, "[t]he inventors as named in an issued patent are presumed to be correct." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004) (internal quotes omitted). The general rule is that a party alleging misjoinder or non-joinder of inventors must meet the heavy burden of proving its case by clear and convincing evidence . . . and must provide evidence to corroborate the alleged joint inventor's conception . . ." *Id.* "A long line of decisions in [the Court of Appeals for the Federal Circuit] holds that a person is a joint inventor only if he contributes to the conception of the claimed invention." *Id.* at 1359. "[T]he test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention; the inventor must prove his conception by corroborating evidence, preferably by showing a

7

contemporaneous disclosure." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). Thus, to survive a motion to dismiss, BECO must allege facts that would allow the Court to draw a "reasonable interference" that Lininger contributed to the conception of the claimed inventions. *Iqbal*, 556 U.S. at 678.

The TAC alleges that Lininger was involved in the early stages of developing the Meter. TAC ¶ 12. BECO claims it was Lininger's idea to add an additional metal ring to their existing flow meter. *Id.* BECO, however, fails to tie this work to any of the patents at issue. Rather, BECO summarily concludes, "Lininger contributed to the conception of an invention by at least on [*sic.*] claim of each of the patents." TAC ¶ 59. After considering the details of the patents provided in the TAC and the GTS Complaint[4], this Court cannot determine whether the addition of the third ring may have "contributed to the conception" to any of the *patents* at issue. *See* TAC ¶ 58. BECO's Opposition papers cite to three claims of Patent No. 6,799,474, which describe it as a device with two sensors designed to measure fluid flow. Opposition at 10-11. The first sensor contains two rings. *Id.* at 11. From this description, BECO states it "should be clear that GTS is on adequate notice of the position that BECO is taking with regards to its claims that Mr. Lininger is an inventor." *Id.* at 11. Frankly, this Court cannot tell from the quoted passages how Lininger's three-ring concept even applies to this patent. The parties are undoubtedly more familiar with the details of the patents at issue in this case. That does not excuse BECO (or GTS, for that matter) from the responsibility to make the factual basis for its claims apparent in its pleadings.

Because BECO fails to provide a factual basis from which this Court could reasonably infer that Lininger is a joint inventor for any of the patents at issue, Defendant's Motion to Dismiss Plaintiff's Tenth Cause of Action is GRANTED. Plaintiff is granted leave to amend this claim.

**B.    Whether Plaintiff Has Properly Asserted That It Was Assigned Rights to Patents**

BECO's Eleventh Cause of action asserts that it has property rights to all of the patents at issue

---

[4] While the GTS Complaint does not operate as a pleading in this case, the Court takes judicial notice of it.

in this case because named inventors were under "express or implied obligations" to assign their interests to BECO. TAC ¶ 162. GTS argues that this claim must fail because BECO fails to identify any contract or agreement that could serve as the basis for this claim. MTD at 6. Moreover, GTS claims that the contracts at issue (attached to the TAC as exhibits A & B) clearly show that the parties agreed that GTS would possess all intellectual property rights for the products they co-developed. MTD at 6.

In its Opposition, BECO clarifies that its ownership claims are based on allegations that one or more named inventors (Fematt, Brown, or Borchert) on each patent was a BECO employee at the time the patent was obtained. Opposition at 13. Employers may claim an intellectual property right "where the employer specifically hires or directs the employee to exercise inventive faculties" based on the existence of an implied contract. *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 407 (Fed. Cir. 1996) (citing *United States v. Dubilier Condenser Corp*, 289 U.S. 178, 187 (1933)). Whether or not such an implied contract was formed assigning rights to an employer is a question of state contract law. *Id.* California contract law does not recognize the terms of an implied contract if they are contradicted by an express written contract. *Tollefson v. Roman Catholic Bishop*, 219 Cal. App. 3d 843, 855 (1990), *disapproved on other grounds by Scott v. Pac. Gas & Elec. Co.*, 11 Cal. 4th 454 (1995). Here, Plaintiff has attached contracts that contain terms assigning any intellectual property rights it might have. TAC ¶¶ 36-37, Attachments A & B. The first agreement states that BECO will have property rights to the Cow ID products that are the subject of Attachment A. TAC ¶ 36, Attachment A ¶ (d). The second agreement states that GTS will have property rights to the Product Line described in Attachment B. TAC ¶ 37, Attachment B at 4 ("GTS owns all rights (patents, intellectual property etc.) for all products in this agreement, BECO can't reproduce, copy or distribute any hardware or software involved for all products without explicit GTS authorization."). Any implied contract that may have existed between BECO and the named inventors of Product Line components is clearly contradicted by this language, and the terms of the express agreements must prevail.

Plaintiff also claims that named inventors Fematt, Brown and Borchert could not have effectively

9

1  assigned their interests to GTS because of their status as fiduciaries of BECO. Opposition at 13-14. The
2  cases BECO cites to for this theory, however, are based on the torts of unfair competition, *Hall v.*
3  *Dekker*, 45 Cal. App. 2d 783, 786 (1941) and breach of fiduciary duty (*Daniel Orifice Fitting Co. v.*
4  *Whalen*, 198 Cal. App. 2d 791, 799 (1962)). While these cases reallocated intellectual property rights to
5  some extent as *remedies*, neither was concerned with the *creation of* such rights. Given that, (a) Plaintiff
6  does not claim that the written contracts are invalid[5] and (b) any implied employment contracts are
7  overruled by the express agreements, there is no basis for Plaintiff's assertion that the inventors'
8  relationships with BECO undermined their ability to assign their property rights.
9          Thus, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's Eleventh Cause of Action,
10 to the extent that it is based on the products described in the Product Line Agreement. TAC Attachment
11 B. Because amendment would be futile, Plaintiff is not granted leave to amend this claim.
12 **C.      Whether Plaintiff Has Properly Asserted its Claim to Shop Rights**
13         Plaintiff claims that it has "shop rights" to the products that are the subject of the patents because
14 it contributed to their development. TAC ¶ 167. Shop rights are based in common law and entitle
15 employers "to use without charge an invention patented by one or more of its employees without
16 liability for infringement." *McElmurry v. Arkansas Power & Light Co.*, 995 F.2d 1576, 1580 (Fed. Cir.
17 1993). Whether an employer has a shop right in an employee's invention depends upon an analysis
18 guided by "the principles of equity and fairness" which considers "the circumstances surrounding the
19 development of the patented invention and the inventor's activities respecting that invention, once
20 developed." *Id.* at 1581-82.
21         Defendant argues that the doctrine of shop rights is limited where, as here, express agreements
22 exist that allocate intellectual property rights. MTD at 8. Plaintiff counters that the agreements could not
23 undermine its rights to six of the eight patents at issue, because they were issued before the agreements

---

[5] To the contrary, one of Plaintiff's prayers for relief is for a declaration giving "full force and effect" to this agreement. TAC p. 37, ¶E.

were signed. Opposition at 15 (arguing that case law does not suggest that "shop rights can be retroactively proscribed by later contractual provisions."). This argument does not serve BECO well. Regardless of whether the agreements could affect the *formation* of shop rights, they are certainly capable of disposing of them. It is preposterous to suggest that one cannot contractually dispose of property after one has acquired it. Here, the Product Line agreement clearly states that "GTS owns *all* rights (patents, intellectual property, etc.) for all products in the agreement . . ." TAC Attachment B. Plaintiff does not identify any basis from which this Court might conclude that any shop rights it may have had should be excepted from this contract provision.

Thus, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's Twelfth Cause of Action , to the extent that it is based on the products described in the Product Line Agreement. TAC Attachment B. Because amendment would be futile, Plaintiff is not granted leave to amend this claim.

**D.      Whether Plaintiff Has Stated a Valid Non-infringement Claim**

Plaintiff's Thirteenth Cause of Action seeks a declaration stating that its "accused products" do not infringe on any of the patents at issue. TAC ¶¶ 173-181. Defendant argues that Plaintiff does not provide any factual basis for this cause of action. Opposition at 10-12.

The plausibility of a claim for direct patent infringement is measured against the specificity required by Form 18 (the model form for such claims appended to the Federal Rules of Civil Procedure). *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012). The elements of such a claim are (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent by "making, selling and using" the device embodying the patent (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages. *Id.* District courts in several jurisdictions have concluded that these pleading standards also apply to non-infringement claims and counterclaims. *See Neonatal Prod. Grp., Inc. v. Shields*, No. 13-CV-2601-DDC-KGS, 2014 WL 6685477, at *10 (D. Kan. Nov. 26, 2014) (collecting cases). This Court agrees that if one party can state a claim for direct

infringement by alleging that it owns a patent and that "defendant has been infringing the patent by making, selling, and using [the device] embodying the patent," the other may state a mirror-image counterclaim of non-infringement by alleging that its accused product does not infringe plaintiff's patent." *Bill of Lading*, 681 F.3d at 1334.

At this point, the GTS Complaint does not operate as a pleading in this case. However, BECO argues that it is clearly incorporated by reference into the TAC. Opposition at 16. Paragraph 7 of the TAC explains that it is seeking a declaratory judgment "regarding non-infringement . . .concerning patents which Defendant has asserted against Plaintiff," first in GTS's Answer and Counterclaim, and then again in the GTS Complaint. Paragraph 58 identifies these patents. The language used to describe the patents in the TAC is substantially similar to that in paragraph 46 of GTS's Answer and Counterclaim, Doc. 16, and paragraph 14 of the GTS Complaint. Clearly, GTS is on notice as to which patents are at issue.

Paragraph 11 of the GTS Complaint identified that the "ScanNexus electronic milk meter," "FlowNexus detacher electronics," "PulsNexus pulsation monitor system," and "ParlorScan Software" are embodied by these eight patents. BECO argues that it is obvious that these products are the subject of BECO's non-infringement claims as well. Opposition at 17. GTS, however, also indicated that these trade names "are all given to various products by BECO." GTS Complaint ¶ 14. Thus, it seems that GTS has not yet identified the complete suite of products that it believes may be infringing on its patents. The Federal Circuit allows some claims to proceed where the extent of infringement is not ascertainable prior to discovery:

> We do not read Form 18—or [*Bill of Lading*]—to require that a plaintiff identify an accused device by name. That [Plaintiff] cannot point to the specific device or product within [Defendants'] systems that translates the digital television signals each receives—especially when the operation of those systems is not ascertainable without discovery—should not bar [Plaintiff's] filing of a complaint.

*K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc*., 714 F.3d 1277, 1286 (Fed. Cir. 2013).

Principles of fairness suggest that this courtesy should be extended to non-infringement claims.

"The touchstones of an appropriate analysis under Form 18 are notice and facial plausibility." *Id.* While the TAC is not a model of clarity, the Court concludes it presents enough facts to make its non-infringement argument plausible on its face. Moreover, GTS is clearly on notice of the extent of BECO's claims. This is sufficient to survive a motion to dismiss. *Id.* Thus, the Court DENIES Defendant's motion to dismiss Plaintiff's Thirteenth Cause of Action.

E.   **Whether This Court Must Dismiss Plaintiff's Invalidity Claim**

Plaintiff's Fourteenth Cause of Action alleges that the patents at issue are "invalid for failure to meet the conditions for patentability specified in 35 U.S.C. §§ 101, 102, and/or 103, and or failure to comply with the requirements of 35 U.S.C. § 112." TAC ¶¶ 184-191. GTS argues that this claim should be dismissed because BECO does not assert any facts that would suggest that any of the patents are invalid. MTD at 10-12. Plaintiff counters that many federal courts allow parties to plead claims based on statutory reference alone, because of the similarity between invalidity claims and infringement claims. Opposition at 18.

Plaintiff cites to a decision from the Central District of California for the theory that it would be "incongruous to require heightened pleading for invalidity claims when the pleading standard for infringement itself does not require [more specific facts]." *Id.* (quoting *Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F. Supp. 2d 1156, 1159 (C.D. Cal. 2010)). This holding, however, relied on local rules that required invalidity contentions be served promptly after the complaint. *Id.* ("In addition, because the Court requires that invalidity contentions be served promptly after a counterclaim of invalidity is advanced, invalidity claims are not subject to the heightened pleading standards of *Twombly* and *Iqbal*."). Most other courts that agree with the Microsoft Court's holding have similar local rules in place. *See Orientview Technologies LLC v. Seven For All Mankind, LLC*, No. 13 CIV. 0538 PAE, 2013 WL 4016302, at *5 (S.D.N.Y. Aug. 7, 2013) (collecting cases). No such rules apply in this jurisdiction. Moreover, this court does not agree that it is necessarily inconsistent for different legal theories to have

different pleading thresholds. Thus, absent any directive that claims of invalidity, like claims of direct infringement, should be measured under a different standard than almost all other claims in this Circuit are, the Court declines to do so.

BECO also argues that its invalidity claims are based on their assertion that it had previously sold products similar to the ones embodied in the patents at issue. Opposition at 18-19. It points out that the existence of similar products may invalidate some of GTS's patents under 35 U.S.C. §§ 102 and 103. *Id.* at 19. The TAC discusses BECO's work on a milk meter prior to its involvement with Fematt, TAC ¶ 11 and alleges that GTS failed to disclose certain prior art to the Patent Office, TAC ¶ 62. However, it is not clear that these allegations form the base for any of its myriad invalidity claims articulated in paragraphs 181-192. Plaintiff alleges invalidity under four separate statutes, which set forth numerous and independent grounds for invalidating a patent claims (e.g., prior public use, prior offer to sell, prior printed publication, abandonment, prior patenting in a foreign country by the inventor or his or her legal representatives or assigns, prior published patent applications by others, prior issued patents by others, non-joinder of inventors, prior invention by others, etc.). No facts are tied to these allegations. Because BECO fails to identify facts "necessary to sustain recovery under some viable legal theory" *Twombly*, 550 U.S. at 562, its claims are not plausible. Thus, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's Fourteenth Cause of Action. Plaintiff is granted leave to amend.

F.      **Whether Plaintiff Has Alleged a Viable Claim for Patent Misuse**

Plaintiff's Fifteenth Cause of Action alleges that Defendant's patents are unenforceable because they have been misused in that Defendants have exploited the patents beyond their lawful scope. TAC ¶ 195. Defendant argues that Plaintiff fails to provide sufficient factual detail to support this claim. Opposition at 12-13. In its Opposition, BECO explains that this claim is based on GTS's own claim that BECO's activities in the Ukraine infringe on their U.S. patents. Opposition at 20. BECO argues that it is misuse for GTS to attempt to enforce the patents outside the United States. *Id.* These facts do not appear in the TAC and BECO offers no other independent explanation defending the viability of this claim.

Thus, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's Fifteenth Cause of Action, to the extent that it is based on its allegations of patent misuse. Plaintiff is granted leave to amend this claim.

**G.     Whether Plaintiff Has Alleged a Viable Claim for Inequitable Conduct**

Plaintiff's Fifteenth Cause of Action also alleges that the patents at issue are unenforceable because of Defendant's inequitable conduct. TAC ¶ 196. Defendant argues that this claim should be dismissed because it does not meet the heightened pleading standard required by Rule 9(b). MTD at 13-15.

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9. The Federal Circuit has made clear that inequitable conduct "while a broader concept than fraud, must be pled with particularity" under Rule 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). Conclusory statements that simply aver "the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation" are insufficient. *Id.* at 1327. Pleadings will only survive a motion to dismiss "if the plaintiff's complaint recites facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the [US Patent and Trade Office] and withheld that information with a specific intent to deceive the PTO." *Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011). It may only require "but a few facts" to plead a viable claims, as Plaintiff observes. The test is whether a party has plead "the who, what, when, where, and how of the alleged fraud." *Exergen,* 575 F. 3d at 1327 (internal quotations omitted).

Plaintiff argues that it provides these details in paragraphs 15, 62, and 196 of the TAC. Opposition at 22. Paragraph 15 alleges that Fematt and Borchert travelled to Hanford, CA to meet with Brown and Lininger in September of 1997 to discuss development of the Meter. TAC¶ 15. They talked about BECO's existing products "that included conductivity sensors and resistance sensors" and Lininger's idea to use three rings in the Meter. *Id.* Paragraph 62 alleges, "that GTS, Fematt, Brown,

Borchert, Viesca, and Meanie . . .failed to disclose to the [PTO] information material to the patentability of the claims in the Patents, including material prior art, with the intent to deceive the USPTO . . . including resistivity sensors and conductivity sensors." TAC ¶ 62. Paragraph 196 alleges, "Defendant, its agents, and their patent prosecution attorney(s), failed to disclose information material to the patentability of the claims in the Patents . . .with the intent to deceive the PTO." TAC ¶ 196.

Plaintiff has identified several parties who it alleges are liable for inequitable conduct: Fematt, Brown, Borchert, Viesca and Meanie. TAC¶ 62. To survive a motion to dismiss, Plaintiff must "recite facts which the court may reasonably infer" that *each* individual a) knew of invalidating information that was withheld from the PTO and b) withheld that information with a specific intent to deceive. *Delano Farms*, 655 F. 3d at 1350. For example, a federal district court in Indiana allowed inequitable conduct claims to proceed where a Defendant named individuals who allegedly withheld specific references from the PTO and explained how these claims were material to individual claims of a particular patent. *Lincoln Nat. Life v. Transamerica Fin. Life Ins. Co.*, No. 1:08-CV-135, 2009 WL 4547131, at *3 (N.D. Ind. Nov. 25, 2009). Here, Plaintiff fails to explain how its conductivity and resistance sensor are material to any claim of any patent at issue, where the information supporting its theories may be found in its references, or tie any of the named individuals to specific conduct that might support a "reasonable inference" that they intended to deceive the PTO.

For this reason, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's Fifteenth Cause of Action, to the extent that it is based on inequitable conduct. Plaintiff is granted leave to amend this claim.

## VII. CONCLUSION AND ORDER

For the reasons discussed above, Defendant's Motion to Dismiss Plaintiff's Tenth through Fifteenth Causes of Action, Doc. 60, is GRANTED IN PART and DENIED IN PART, as follows:

Defendant's Motion to Dismiss Plaintiff's Tenth Cause of Action is GRANTED. Plaintiff is granted leave to amend this claim.

Defendant's Motion to Dismiss Plaintiff's Eleventh Cause of Action is GRANTED, to the extent that it is based on the products described in the Product Line Agreement. TAC Attachment B. Plaintiff is not granted leave to amend this claim.

Defendant's Motion to Dismiss Plaintiff's Twelfth Cause of Action is GRANTED, to the extent that it is based on the products described in the Product Line Agreement. TAC Attachment B. Plaintiff is not granted leave to amend this claim.

Defendant's Motion to Dismiss Plaintiff's Thirteenth Cause of Action is DENIED.

Defendant's Motion to Dismiss Plaintiff's Fourteenth Cause of Action is GRANTED. Plaintiff is granted leave to amend this claim.

Defendant's Motion to Dismiss Plaintiff's Fifteenth Cause of Action is GRANTED, to the extent that it is based on its allegations of patent misuse or inequitable conduct. Plaintiff is granted leave to amend this claim.

Plaintiff shall file any amended complaint within 14 days of this order.

No later than 21 days after service of any amended complaint, Defendants shall file a response thereto. Defendants may file counterclaims (including claims originally asserted in the complaint Defendants filed in Case 865) in accordance with the Federal Rules of Civil Procedure.

Plaintiff is cautioned that this will be the last opportunity to amend, absent a showing of good cause. Plaintiff should only amend if amendment will not be futile based on the law and holding in this Order. This court does not have the resources to review and write extensive orders on how to write, rewrite and submit pleadings. This order gives the proper direction for the last time.

**SO ORDERED**
**Dated: March 3, 2015**

                                    **/s/ Lawrence J. O'Neill**
                                    **United States District Judge**