1

2          **UNITED STATES DISTRICT COURT**

3        **FOR THE EASTERN DISTRICT OF CALIFORNIA**

4

| | |
|---|---|
| **BECO DAIRY AUTOMATION, Inc.,** | **1:12-cv-01310 LJO SMS** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER RE: THIRD PARTY DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE TO SEVER AND TRANSFER STAN BROWN'S CLAIMS (Doc. 131)** |
| v. | |
| **GLOBAL TECH SYSTEMS, Inc. and DOES 1-50,** | |
| **Defendants.** | |
| **GLOBAL TECH SYSTEMS, Inc., A New Mexico Corporation** | |
| **Counterclaimant,** | |
| v. | |
| **BECO DAIRY AUTOMATION, INC., a California Corporation, and STAN BROWN, an individual,** | |
| **Counter-defendants.** | |

## I. INTRODUCTION

This litigation involves a dispute between Beco Dairy Inc. ("BECO") and Global Tech Systems, Inc. ("GTS") concerning the development and distribution of dairy technology.

## II. BACKGROUND OF THE CASE

The procedural history of this case has been documented extensively in previous orders. *E.g.* Doc. 128. BECO's fifth amended complaint is operative and alleges claims arising under contract, tort and patent law against GTS. Doc. 81.

1

1    GTS filed an answer and several counterclaims on August 3, 2015. Doc. 95. The counterclaims

2    added Stan Brown as a counter-defendant. *Id.* Its amended answer and counterclaims ("FAA"), Doc.

3    107, are operative. On November 5, 2015, Stan Brown filed an Answer to the FAA, ("Brown Answer"),

4    Doc. 110, and his own cross claims ("Brown Claims") against GTS, and third party defendants Robert

5    and Agnes Borchert ("the Borcherts"), Antonio Fematt and Madison One Holdings, LLC ("Madison").

6    Doc. 110-1 ¶¶ 2-5. Brown alleges that the cross-defendants are liable for interference with prospective

7    economic advantage (Count I), breach of contract (Counts II & III), breach of fiduciary duty (Counts IV

8    & V), and negligence (Count VI). Brown Claims ¶¶ 61, 68, 80, 84, 90, 95. Brown also seeks a

9    declaratory judgment against GTS regarding the validity of several patents at issue (Count VII). *Id.* ¶ 97-

10   99.

11        On January 25, 2016 the Borcherts, Fematt and Madison moved to dismiss Brown's claims on

12   the basis that this Court does not have personal jurisdiction over them, pursuant to Fed. R. Civ. P.

13   12(b)(2). Third Party Defs.' Mem. of P. & A. in Suppo. of Their Mot. to Dismiss ("MTD"), Doc. 131 at

14   2. Alternatively, Defendants seek to have the action transferred to the U.S. District Court for the District

15   of New Mexico, or to have the claims dismissed pursuant to Rule 12(b)(6). *Id.* Brown timely filed an

16   opposition. Stan Brown's Opp'n to Third Party Defs.' Mot. to Dismiss ("Opposition"), Doc. 133. Cross-

17   defendants filed a reply on February 23, 2016. Reply, Doc. 135. The hearing set for the motion was

18   vacated pursuant to Local Rule 230(g).[1]

19                                 **III. <u>FACTUAL BACKGROUND</u>**

20        GTS is a New Mexico Corporation. Brown Answer ¶ 2. It was formed in the year 2000 by

21   original shareholders Brown, the Borcherts, Fematt and Victor Viesca. *Id.* ¶ 7. GTS was formed to

22   manufacture electronic circuit boards and software products that were jointly developed with BECO.

23   Brown Claims ¶ 7. Both Robert Borchert ("Borchert") and Brown were on BECO's board of directors.

24

25   _____
[1] Also pending before the Court is GTS's motion to dismiss Brown's state law claims and to strike several of his affirmative defenses. Doc. 114. That matter will be addressed in a separate order.

*Id.* ¶ 8. Femattt was a BECO employee and on GTS's board of directors. *Id.* Brown alleges that Borchert was regularly present in BECO's California office between 1996 and "2007/2008" and that he attended BECO board meetings there "until approximately 2006." Decl. of Stan Brown ("Brown Decl."). Doc. 133-1, ¶¶ 4-5.

At some point, GTS shareholders agreed that they would not sell GTS shares to outside of the company without first offering their shares to existing shareholders. Brown Claims ¶ 14. On August 19, 2010, the shareholders met and elected a board of directors and ratified their bylaws. *Id.* ¶ 18. Femattt, Viesca and Borchert were elected to continue serving as directors. Minutes of GTS Meeting, August 19, 2010, Brown Claims Ex. A, Doc. 110-2, Ct. R. 2. Prior to this meeting, Borchert, Brown, Viesca and Femattt had acted as directors. Brown Claims ¶ 17. The bylaws also provided that GTS would have the right of first refusal to purchase any shares that a shareholder wished to sell. Bylaws of GTS ("GTS Bylaws"), Brown Claims Ex. B, Doc. 110-2, Ct. R. 18. Should GTS not wish to purchase these shares, then the shares would next be offered to existing shareholders. *Id.* On September 11, 2012 the bylaws were amended, and the above sections were removed. A Resolution of the Board of Directors of GTS, Inc. ("GTS Resolution"), Brown Claims Ex. C, Doc. 110-2, Ct. R. 26. Brown alleges that he did not become aware of the Resolution until September of 2013. Brown Claims ¶ 27. Once he became aware of the resolution, he attempted to prevent the GTS Directors from selling their shares to outsiders. *Id.* ¶ 31.

On October 14, 2013, Femattt, Viesca and Borchert sold their shares in GTS to Madison. *Id.* ¶ 32. Madison is a direct competitor of BECO's. *Id.* ¶¶ 28, 46. On October 17, 2013 the GTS Directors elected Madison's employee, Michael Mills to serve as president. *Id.* ¶ 43. Brown describes Mills as Madison's in-house counsel, *id.* ¶ 44, however Mills testified that he is a manager at Madison. Decl. of Michael Mills ("Mills Decl.), Doc. 131-1, ¶ 1. Brown alleges that Mills also served as president to another one of BECO's competitors, Bou-Matic. Brown Claims ¶ 44. Brown alleges that Madison acquired the GTS shares so it could obtain the company's "records, patents and trade secrets." *Id.* ¶ 49. He further alleges that once Madison took control of GTS, GTS failed to sell product to BECO, harming

1    the value of GTS's stock. *Id.* ¶ 50.

2    

### IV. <u>STANDARD OF DECISION</u>

3    The party seeking to invoke the federal court's jurisdiction bears the burden of demonstrating

4    personal jurisdiction. *Pebble Beach Company v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). However,

5    this demonstration requires that the plaintiff "make only a prima facie showing of jurisdictional facts to

6    withstand the motion to dismiss." *Id.* (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)).

7    When resolving a motion to dismiss under Rule 12(b)(2) on written materials, the court accepts

8    uncontroverted facts in the complaint as true and resolves conflicts in affidavits in plaintiff's favor.

9    *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Similarly, "when

10    reviewing motions to dismiss" for lack of personal jurisdiction, the court "must 'accept all factual

11    allegations [in] the complaint as true and draw all reasonable inferences in favor of the nonmoving

12    party.'" *Western Center for Journalism v. Cederquist*, 235 F.3d 1153, 1154 (9th Cir. 2000) (quoting

13    *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)).

14    While the court reviews motions to dismiss for lack of personal jurisdiction in the light most

15    favorable to the non-moving party, "when there is a conflict between the complaint and an affidavit,

16    plaintiff cannot rely solely on the complaint to establish jurisdictional facts." *North American Lubricants*

17    *Co. v. Terry*, 2012 WL 1108918, at *4 (E.D. Cal. Apr. 2, 2012) (citing *Data Disc, Inc.*, 557 F.2d at

18    1284). In addition, the court need not consider merely conclusory claims, or legal conclusions in the

19    complaint as establishing jurisdiction. *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 988

20    (E.D. Cal.2012) (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)). If the court

21    considers only written materials, plaintiff must show facts, which if true, would establish personal

22    jurisdiction over defendants. *Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 862 (9th Cir.

23    2003).

24    Questions of personal jurisdiction ultimately turn on concepts of due process. "[D]ue process

25    requires only that in order to subject a defendant to a judgment in personam, if he be not present within

1  the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit

2  does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.,*

3  *Office of Unemployment,* 326 U.S. 310, 316 (1945) (internal quotations omitted). Because no federal

4  statute authorizes personal jurisdiction, this Court must apply California law. As California's long arm

5  statute is coextensive with federal due process requirements, the jurisdictional analysis is the same.

6  *Mavrix Photo Inc.,* 647 F.3d at 1223; Cal. Civ. Proc. Code § 410.10.

7  ### V. <u>ANALYSIS</u>

8      There are two types of personal jurisdiction: general and specific. General jurisdiction permits

9  the court to hear all claims against a defendant whose affiliations with the forum state are "so

10  'continuous and systematic' as to render [it] essentially at home in the forum State. i.e., comparable to a

11  domestic enterprise in that State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 758 (2014) (quoting

12  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011)).

13      Specific personal jurisdiction, on the other hand, exists when a defendant's "in-state activity is

14  continuous and systematic and *that activity gave rise to the episode-in-suit*." *Goodyear*, 131 S. Ct. at

15  2853 (internal quotation marks omitted) (emphasis in original). Courts in the Ninth Circuit apply a

16  three-part test to assess whether a defendant has sufficient contacts with the forum state:

17      (1) The non-resident defendant must purposefully direct his activities or
    consummate some transaction with the forum or resident thereof; or

18  perform some act by which he purposefully avails himself of the privilege
    of conducting activities in the forum, thereby invoking the benefits and

19  protections of its laws;
    (2) the claim must be one which arises out of or relates to the defendant's

20  forum-related activities; and
    (3) the exercise of jurisdiction must comport with fair play and substantial

21  justice, i.e. it must be reasonable.

22  *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Schwarzenegger v. Fred Martin Motor Co.*,

23  374 F.3d 797, 802 (9th Cir. 2004)). "The plaintiff has the burden of proving the first two prongs." *Id.* "If

24  he does so, the burden shifts to the defendant to 'set forth a compelling case' that the exercise of

25  jurisdiction would not be reasonable." *Id.* at 1211 (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*,

1 653 F.3d 1066, 1076 (9th Cir. 2011)). The first prong of the analysis depends on the nature of the claim

2 at issue. *Id.* For claims sounding in contract, courts "apply a 'purposeful availment' analysis and ask

3 whether a defendant has 'purposefully avail[ed] [himself] of the privilege of conducting activities within

4 the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Schwarzenegger,*

5 374 F.3d at 802)). Execution or performance of a contract in the forum state are examples of "purposeful

6 availment." *Schwarzenegger*, 374 F.3d at 802. For claims sounding in tort, courts instead "apply a

7 'purposeful direction' test and look to evidence that the defendant has directed his actions at the forum

8 state, even if those actions took place elsewhere." *Picot*, 780 F.3d at 1211. The distribution of goods in

9 the forum state is an example of "purposeful direction," even if the goods originated elsewhere.

10 *Schwarzenegger*, 374 F.3d at 803. Because the jurisdiction analysis "looks to the defendant's contacts

11 with the forum State itself, not the defendant's contacts with persons who reside there. . . the plaintiff

12 cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 134 S. Ct. 1115, 1122

13 (2014).

14 **A.    Robert Borchert**

15      Defendants argue that the Court does not have personal jurisdiction over Borchert because he is a

16 resident of New Mexico who last visited California in 2010. MTD 2 at 7. Borchert testified that this visit

17 was to attend the World Ag Expo in Tulare and that he did not conduct any business with Brown at that

18 time. Decl of Robert C. Borcert ("B. Borchert Decl."), Doc. 131-3, ¶ 5. Brown asserts that Borchert was

19 a member of BECO's board of directors from "1996 to 2007/2008." Brown Decl. ¶ 3. BECO is a

20 California corporation and Brown alleges that Borchert was "regularly present" in its California officer

21 during this time period. *Id.* ¶ 4. Brown also claims that Borchert negotiated an agreement between

22 BECO and GTS in 2005 and negotiated the lease of a GTS office in California in 2003. *Id.* ¶¶ 5-6.

23      **1.    General Jurisdiction**

24      It is not clear whether Brown is asserting that this Court has general jurisdiction over Borchert.

25 Regardless of his intentions, the facts he alleges do not give rise to a conclusion that Brown was

6

1    "essentially at home" in California. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984)

2    (finding that for general jurisdiction to exist over a non-resident individual his contacts with the forum

3    state must be sufficient "to conclude that [he] 'may in fact be said already to be 'present'

4    there.'")(quoting *Wells Fargo & Co. v. Wells Fargo Express Co*., 556 F.2d 406, 413 (9th Cir. 1977)).

5    The landmark case for general jurisdiction is *Perkins v. Benguet Consol. Min. Co*., 342 U.S. 437, 448

6    (1952). In *Perkins*, jurisdiction was premised on the fact that the defendant corporation had temporarily

7    established virtually all of its administrative functions within the forum state while its overseas base of

8    operations was controlled by a foreign power. *Id.*   The US Supreme Court later described the situation as

9    being that, "Ohio was the corporation's principal, if temporary, place of business." *Keeton v. Hustler*

10   *Magazine, Inc*., 465 U.S. 770, 779 n. 11 (1984). In contrast, in *Cornelison v. Chaney*, the defendant was

11   an independent contractor who hauled goods in interstate commerce and made about 20 trips a year into

12   California for seven years. 16 Cal. 3d 143, 146-47 (1976). He was also licensed by California's Public

13   Utilities Council. *Id.*  at 147. Such contacts were "not sufficient to justify the exercise of jurisdiction

14   over defendant without regard to whether plaintiff's cause of action is relevant to California activity." *Id.*

15   at 149. Even reading the facts of this case in a light most favorable to Brown, they are more like the

16   claims described in *Corenelison* than in *Perkins*. "For an individual, the paradigm forum for the exercise

17   of general jurisdiction is the individual's domicile . . ." *Goodyear*, 131 S. Ct. at 2853. While Borchert's

18   visits may have been "regular" and he may have conducted business in California, his activity is more

19   similar to that of the frequent visitor in *Cornelison* than someone seeking to make himself "at home."

20   For example, Brown does not assert that Borchert currently or previously resided in California,

21   registered to vote there, had a California driver's license or automobile registration, owned any real or

22   personal property located there, had a bank account, spouse, or family there or paid California taxes. *See*

23   *Lockard v. Lockard*, 15 F.3d 1086 (9th Cir. 1993) (describing these factors, along with place of

24   employment, as the most important for determining location of domicile for diversity jurisdiction

25   purposes). Rather, Borchert's only contacts were through his frequent, employment-related visits. Such

1    activity was insufficient in *Corenelison* and thus they are insufficient here.

2              **2.      Specific Jurisdiction**

3              Brown may be subject to specific jurisdiction if his in-state activities "gave rise to the episode-

4    in-suit." *Goodyear*, 131 S. Ct. at 2853. Brown asserts claims against Borchert based on tort and contract

5    law. Brown Claims ¶¶ 61, 68, 80, 84, 90, 95. The tortious activity alleged is Borchert's "inducement" of

6    the other directors to sell their shares of GTS stock to Brown's competitor. *Id.* ¶ 61. Brown claims that

7    such an action breached the fiduciary duty owed to him as a minority shareholder and amounted to

8    negligence. *Id.* ¶¶ 83, 95. Brown does not explain how such actions were "directed at" California.

9    Borchert testified that the transaction at issue was negotiated in Colorado and executed in New Mexico.

10   Borchert Decl. ¶ 7.  To the extent that these activities may have been directed at harming Brown, a

11   California resident, or BECO, a California corporation, such connections are insufficient to establish

12   jurisdiction. *Walden*, 134 S. Ct. at 1122 (2014)("[T]he plaintiff cannot be the only link between the

13   defendant and the forum.").  Further, while Borchert may have been regularly present at BECO's

14   California office, these visits do not support jurisdiction because the tort claims do not arise from these

15   occasions. *Picot*, 780 F.3d at 1211. Because the tortious activity Borchert is accused of was not directed

16   towards California or arise out of his California contacts, it cannot support an assertion of specific

17   jurisdiction.

18             The contract at issue is an unwritten agreement among GTS's original shareholders that they

19   would each have the right of first refusal should one of them wish to sell their shares. Brown Claims ¶

20   14. Brown does not explain how Borchert availed himself of California law by entering into the

21   agreement as the contract was not executed or performed in the forum state. Brown alleges that GTS

22   was formed to develop products for BECO and that GTS clearly avails itself of the California market.

23   The Shareholder Agreement, however, does not have anything to do with GTS's relationships with

24   BECO. Rather, it only deals with the relationships *between the shareholders themselves*. GTS is a New

25   Mexico corporation. Brown Claims ¶ 2. Its principal place of business is also in New Mexico. GTS

Bylaws at 1, Doc. 110-2 at Ct. R. 5. With the exception of Brown, none of the other shareholders were

residents of California. Decl. of Antonio Fematt ("Fematt Decl."), Doc. 131-2, ¶ 3; Brown Claims ¶¶ 3,

7. Shareholder meetings have been conducted in New Mexico "since at least 2007." Fematt Decl. ¶

Thus, there is no evidence that Borchert "availed himself" of California law when he allegedly entered

into the shareholder agreement or that the agreement was related to his contacts with California.

Therefore, it cannot support a finding of specific jurisdiction.

**B.**    **Agnes Borchert**

Defendants argue Agnes Borchert ("A. Borchert") has even fewer contacts with California than

her husband does. MTD 1 at 7. A. Borchert testified that she has been a resident of New Mexico at all

times relevant to the case and has never conducted any business in California. Decl. of Agnes Borchert

("A. Borchert Decl."), Doc. 131-4, ¶ 4. Brown does not allege any fact regarding A. Borchert's contacts

with California beyond what is contained in his pleadings. A. Borchert's limited contacts with the forum

state do not provide a basis for this Court to find that is has general jurisdiction over her. Nor do they

show that her minimal contacts with California gave rise to the claims alleged against her. Thus, this

Court does not have specific jurisdiction over her.

**C.**    **Antonio Fematt**

Brown alleges that Fematt "lived in Hanford, California from approximately 1999-2007." Brown

Decl. ¶ 6. According to Brown, Fematt continued to have contacts with California after 2007 because he

travelled there to pick up equipment that he purchased. *Id.* ¶ 8. Brown further alleges that he attended an

event in California in 2010 and negotiated an agreement for BECO in California around this time. *Id.*

Finally, Brown alleges that in April of 2011, Fematt sent BECO a proposed agreement on behalf of

GTS. *Id.* Defendants allege that the Court does not have jurisdiction over Fematt because he is currently

a resident of Texas and previously a resident of New Mexico. MTD at 7. Fematt does not deny

specifically that he lived in California until 2007, stating only that "at all times relevant to Brown's

claims, I was a resident of New Mexico." Fematt Decl. ¶ 3.

9

Reading the facts in a light most favorable to Brown, the Court finds that he adequately alleged that Fematt lived in California between 1999 and 2007. Brown, however, did not file his action against Fematt until November 5, 2015. Brown Claims at Ct. R. 24. In cases that have evaluated general jurisdiction over former residents, courts have limited their analysis to a "reasonable period of years" before the case was filed. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996) (collecting cases). This period has ranged from three (*Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1329, 1330–31 (9th Cir. 1984)) to seven (*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411 (1984)) years. *Id.* While these cases do not establish a bright-line rule, they do guide this Court's estimation of whether asserting jurisdiction would "offend traditional notions of fair play and substantial justice." *Int'l Shoe.*, 326 U.S. at 316. Here, the eight year lapse between Fematt's last residence in California and the time of filing put Brown's claims outside the window considered reasonable by the Supreme Court and the Ninth and Second Circuit Courts of Appeal. While Brown alleges that Fematt has since "conducted business" with BECO, purchased equipment in California, and attended an event in 2010, these contacts are not "systematic" or "continuous" enough to justify the exercise of general jurisdiction.[2] Fematt's limited contact with California cannot support specific jurisdiction either, because his in-state contacts did not give rise to Brown's claims.

**D.    Madison One Holdings, LLC**

Defendants assert that the Court does not have jurisdiction over Madison because the company has insufficient contacts with California. MTD at 8. Its manager, Michael Mills, testified that Madison is a Nevada company with a principal place of business in Wisconsin. Mills Decl. ¶ 3. Mills also asserts that Madison is a holding company with no operations of its own, and that it has "no contracts in or with

---

[2] Some courts also find general jurisdiction exists if a defendant's contacts existed at the time the cause of action arose. *See, e.g. Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) ("Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit."). While the Ninth Circuit has not weighed in on whether such contacts would support general jurisdiction, it is of no consequence here. Brown's claims arose when Fematt allegedly agreed to sell his GTS shares to a competitor instead of to Brown. This occurred in 2010, some three years after he left California.

1   any person or entity in California." *Id.* ¶ 4. Brown alleges that the Court has jurisdiction over Madison

2   because it does business in California. Brown Claims ¶ 5. First, Brown alleges that Madison's owner,

3   John Kotts, called Brown to discuss his interest in purchasing BECO and discussed working together at

4   an event in 2010. Brown Decl. ¶ 9. Second, he claims that Madison owns another company, Bou-Matic

5   that "has sales representatives and numerous dealers in California and regularly sells its products in

6   California." *Id.* ¶ 11.

7          Brown's argument relies on the assumption that Bou-Matic's and or Kott's contacts can be

8   attributed to Madison. However, "[i]t is a general principle of corporate law deeply ingrained in our

9   economic and legal systems that a parent corporation (so-called because of control through ownership of

10  another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524

11  U.S. 51, 61 (1998) (internal quotations omitted). Jurisdiction must be based on the contacts of the parent

12  corporation itself. *Daimler*, 134 S. Ct. at 760 (finding no jurisdiction over parent company "[e]ven if we

13  were to assume that [subsidiary] is at home in California, and further to assume [subsiary]'s contacts are

14  imputable to [parent]" because "there would still be no basis to subject [parent] to general jurisdiction in

15  California, for [parent]'s slim contacts with the State hardly render it at home there."). A court may only

16  attribute a subsidiary's contacts with the forum state to its parent "upon a showing that the subsidiary is

17  an alter ego of its parent." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1065 (9th Cir. 2015).[3] To demonstrate

18  that alter ego exception applies, the plaintiff must make out a prima facie case "(1) that there is such

19  unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2)

20  that failure to disregard [their separate identities] would result in fraud or injustice." *Unocal Corp.*, 248

21  F.3d at 926. The first prong of this test is satisfied where the record indicates that the parent dictates

22

---

23  [3] While the *Ranza* Court evaluated the inverse situation (whether a parent company's contacts with a forum state could be attributed to its subsidiary), it is only logical that the principle would apply both ways. Such a conclusion is consistent with

24  *Daimler*, because that decision did not disturb the precedent that "a subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego." 134 S. Ct. at 759 (finding that the Ninth Circuit adopted a "less rigorous" test when it engaged in the alter ego analysis).

25

1   "[e]very facet [of the subsidiary's] business-from broad policy decisions to routine matters of day-to-day

2   operation." *Id.* Alternatively, an alter-ego relationship may exist where a parent corporation uses its

3   subsidiary "as a marketing conduit and attempts to shield itself from liability based on its subsidiaries'

4   activities." *Id.* Additionally, "inadequate capitalization of a subsidiary may alone be a basis for holding

5   the parent corporation liable for the acts of the subsidiary." *Id.* at 927. Here, Brown does not claim that

6   Bou-Matic is Madison's alter ego. Nor does he allege facts that would support such a conclusion. Thus,

7   Bou-Matic's contacts with California cannot be attributed to Madison. To the extent the conversation

8   Kotts had with Brown might be attributed to Madison, such a minimal contact is insufficient to support a

9   finding of general jurisdiction. As was the case with the Borcherts and Fematt, Brown has not alleged

10  that Madison's in-state contacts (if any) gave rise to his claims. Thus, this Court does not have specific

11  jurisdiction over Madison, either.

12          Brown also alleges that he believes "discovery will show that Michael Mills and Madison have

13  significant contacts and have done business in California . . ." Brown Decl. ¶ 10. Brown does not,

14  however, request permission to conduct jurisdictional discovery. Regardless of whether he formally

15  requested discovery or not, it is not improper for a court to deny jurisdictional discovery where a

16  plaintiff states only that he "believes" discovery will enable him to demonstrate contacts. *Butcher's*

17  *Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th

18  Cir. 1986) ("[W]e are unwilling to fault the district court, where, as here, plaintiffs failed to give the

19  district court any notice whatsoever that they were seeking discovery in order to establish personal

20  jurisdiction under the state long-arm statute."). Here, Brown does not provide any basis for this court to

21  find that jurisdictional discovery would be useful. Thus, even if the Court were to construe his motion as

22  a request, there would be no foundation to grant it. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160

23  (9th Cir. 2006) ("Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and

24  based on bare allegations in the face of specific denials made by the defendants, the Court need not

25  permit even limited discovery....")(internal quotations omitted).

## VI. <u>DISPOSITION OF THE CASE</u>

When a district court dismisses a case on the basis that it lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed . . ." 28 U.S.C. § 1631. "Because the statute's language is mandatory, federal courts should consider transfer without motion by the parties." *Cruz-Aguilera v. I.N.S.*, 245 F.3d 1070, 1074 (9th Cir. 2001) "Transfer is appropriate under § 1631 if three conditions are met: (1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice." *Id.* "[T]ransfer will generally be in the interest of justice, unless it is apparent that the matter to be transferred is frivolous or was filed in bad faith." *Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc.*, 793 F.3d 991, 996 (9th Cir. 2015). As the *Amity* Court makes clear, this is a "low bar" and "will usually involve a very limited inquiry by the transferring court." *Id.*

Here, the Defendants put forth that the judicial district of New Mexico is the proper forum for Brown's claims. MTD at 9. The Borcherts testified that they are both residents of that state and Fematt testified that he has a New Mexico resident "at all times relevant to Brown's claims." A. Borchert Decl. ¶¶ 1 & 3; Borchert Decl. ¶¶ 1 & 3; Fematt Decl. ¶ 3. While Madison is not a corporate resident of New Mexico, its manager testified that most of the activities that gave rise to Brown's claims (and with which Madison was involved) occurred in that state. Mills Decl. ¶ 5. Thus it would be subject to specific jurisdiction in that state. GTS did not write in response to the other defendants' motion. However, it has admitted that it is a New Mexico corporation. Answer of Def. GTS to Pl.'s Fifth Am. Compl., Doc. 95, ¶ 2. Thus, GTS would be subject to personal jurisdiction and venue in New Mexico. *See* 28 U.S.C. § 1391(b). Based on the above, it is relatively clear that the District Court of New Mexico would have had jurisdiction over all defendants in this case at the time it was filed. *See Raffle v. Executive Aircraft Maint.*, No. CIV 11-0459 JB/WPL, 2012 WL 592878, at *7 (D.N.M. Feb. 21, 2012) (finding that transfer was appropriate when it was "relatively clear" that the transferee court had jurisdiction over all

1  defendants). As to the third element, no defendant argued that transfer would fail to serve the interests of

2  justice, or that Brown's claims were frivolous or filed in bad faith. Thus, transfer to the U.S. District

3  Court for the District of New Mexico seems to be the appropriate course of action.

4        One complication exists.  Count VII is a patent claim asserted against GTS only. Brown Claims

5  ¶ 100.  The facts underlying this claim are deeply entwined with the facts of the underlying case and

6  counter claims. Transfer of this claim would therefore result in duplicative litigation. The Ninth Circuit,

7  however, has recognized that section 1631 allows a court to sever and retain some claims while

8  transferring others to cure jurisdictional defects. *Baeta v. Sonchik*, 273 F.3d 1261, 1264 (9th Cir. 2001)

9  ("[T]ransfer of the portion of the habeas petition raising nationality allegations to this Court is

10 appropriate."). Thus, the Court may sever this claim.[4] This Court's jurisdiction over GTS is not in

11 dispute. Additionally, because the facts underlying the patent claim involve wholly separate from the

12 issues raised by Brown's state law claims, severance of this claim would not result in duplicative

13 litigation. *Kennedy v. Phillips*, No. C11-1231 MJP, 2012 WL 261612, at *4 (W.D. Wash. Jan. 30, 2012)

14 ("Severance is inappropriate when it results in the same issues being litigated in two places.").  Thus, the

15 Court finds justice will be best served by severing and retaining Brown's seventh cause of action.

16                    **VII. CONCLUSION AND ORDER**

17        For the reasons discussed above, the Court GRANTS in Part and DENIES in Part the Third Party

18 Defendants' motion to dismiss, Doc. 131, as follows:

19        The Court DENIES Defendants' motion to dismiss the action.

20        The Court GRANTS Defendants' motion to transfer the action to the U.S. District Court for the

21 District Court of New Mexico, as to Counts I through VI of Brown's claims only.

22        This Court shall retain jurisdiction over Count VII. Third Party Defendants' Robert C. Borchert,

23 ─────────────────

24 [4] There is a split among other circuit courts on issue. *Cf. United States v. Cty. of Cook, Ill.*, 170 F.3d 1084, 1089 (Fed. Cir.
   1999) (approving of partial transfer); *Miller v. United States*, 753 F.2d 270, 275–76 (3d Cir. 1985) (finding same) and *Hill v.*
   *U.S. Air Force*, 795 F.2d 1067, 1070 (D.C. Cir. 1986) ("Because Section 1631 directs a court to transfer an 'action' over

25 which it lacks jurisdiction, rather than an individual claim, we find that the District Court did not abuse its discretion in
   failing sua sponte to transfer [the plaintiff's] claims."

                              14

1    Agnes Borchert, Antonio Fematt and Madison One Holdings, LLC are not parties to this claim and are

2    dropped from this action.

3        The Clerk of Court is directed to transfer Counts I through VI of this action to U.S. District Court

4    for the District Court of New Mexico, as to all defendants.

5

6    IT IS SO ORDERED.

7        Dated:   __**February 26, 2016**__            ____**/s/ Lawrence J. O'Neill**
                                                            UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

15